# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>JUAN CARLOS TORRES, JR.,<br><br>　　　　　　　　　Defendant. | Case No. 21-cr-01186-BAS-1<br><br>**ORDER DENYING MOTION FOR MODIFICATION OF SENTENCE AND EMERGENCY MEDICAL CARE (ECF No. 60)** |

　　　　On March 11, 2022, after Mr. Torres pled guilty to importing methamphetamine and fentanyl, this Court sentenced Mr. Torres to forty-eight months in custody concurrent on both counts. (ECF No. 55.) Mr. Torres has served approximately seven and a half months of that sentence. (ECF No. 56.) Mr. Torres has now filed a Motion for Modification of Sentence and Emergency Medical Care (ECF No. 60 ("Motion")). The Government opposes (ECF No. 68 ("Response")). The Court referred Mr. Torres's request to Federal Defenders under General Order 692-B to determine whether counsel should be appointed. (ECF No. 61.) But Federal Defenders, "after review[ing] the relevant records in Mr. Torres's case," "does not recommend appointment of counsel at this time." (ECF No. 64.) For the reasons stated below, this Court **DENIES** Mr. Torres's Motion.

## I. BACKGROUND

Mr. Torres pled guilty to importing approximately 23 kilograms of methamphetamine and 118 grams of fentanyl. (Presentence Report, ECF No. 31 ("PSR").) At the time of his importation, he was accompanied by his 10-year-old stepson, his 3-year-old daughter, and his dog. (PSR ¶ 4.) Mr. Torres has a prior misdemeanor conviction for possession of a dangerous weapon. (PSR ¶ 31.) Mr. Torres reported using methamphetamine daily since 2020 (PSR ¶ 59), cocaine 2–3 times a year (PSR ¶ 58), and marijuana daily to help him sleep and with pain management (PSR ¶ 57).

At the time of sentencing, the Court had reviewed the PSR, which details Mr. Torres's medical condition. (PSR ¶¶ 49–51.) He had gastritis resulting from a 2018 sleeve gastrectomy. (*Id.*) On June 29, 2021, he was interviewed by the Probation Department, and at that time, he was "receiving treatment to reduce [an] ulcer, but if that is not effective then he will require surgery." (ECF No. 41, ¶ 2.)

At the request of the Probation Department, the Court continued Mr. Torres's sentencing from August 30, 2021, to November 8, 2021. (ECF Nos. 22, 28.) Before the November sentencing date, Mr. Torres requested another continuance of his sentencing date. (ECF No. 33.) Defense counsel explained that Mr. Torres needed time to allow for surgery and recovery and thus requested a continuance to February 14, 2022, which the Court granted. (*Id.*) Before the February date, defense counsel again requested that the sentencing be continued this time until June because Defendant was scheduled for surgery. (ECF No. 40.) Counsel said defendant would learn when that surgery was scheduled at his February 10, 2022, doctor's appointment. (*Id.*)

After the February 10, 2022, doctor's appointment, defense counsel submitted Mr. Torres's doctor's notes stating that Mr. Torres had a "sleeve gastrectomy complicated by refractory GERD and esophagitis. Needs conversion to gastric bypass." (ECF No. 47.) However, no surgery was scheduled at that time. Instead, the doctor recommended that Mr. Torres reassess with the doctor at the clinic in two months. (*Id.*)

The Court granted Mr. Torres's request for a continuance but only continued the sentencing to March 7, 2022. After sentencing, the Court allowed Mr. Torres additional time to follow up with his doctor and ordered that he self-surrender by April 27, 2022, which he did without additional requests.

For the seven months he has been in custody, Mr. Torres has been seen at sick call for various ailments. When he complained of knee pain, he received an x-ray and pain medication. When he complained of pain from a broken tooth, his tooth was extracted. And he was also seen for a rolled ankle. (Response, Exh. A.)

He also was x-rayed because of his history of a hiatal hernia. (*Id.* at 73.) The reported result on June 9, 2022, was suspicion of "a very small hiatal hernia on frontal view." (*Id.*) In addition, he has been seen for his severe acid reflux and has been approved for a gastroenterology consult. (*Id.* at 9.)

Mr. Torres was accepted into and entered the Bureau of Prisons Residential Drug Treatment Program (RDAP) on August 4, 2022. He is scheduled to complete the program on May 7, 2023. (Response, Exh. A at 62.)

In his Motion, Mr. Torres asks first that he be granted compassionate release and allowed to substitute home confinement as a condition of any supervised release. If the Court denies this request, Mr. Torres asks the Court to issue an emergency order for medical treatment or for the Bureau of Prisons to do a review of the matter and report back to the Court. (Motion.)

Although Mr. Torres claims that he "has exhausted all possible Administrative Remedies available to him without further recourse through the Bureau of Prisons" and that "[t]he Defendant's attempts at Bureau of Prisons Administrative Remedies have proven fruitless," he provides no proof that he has filed any request for compassionate release with the Bureau of Prisons.

## II. ANALYSIS

### A. Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A), a court may, in certain circumstances, modify or reduce a defendant's term of imprisonment, after he has exhausted his administrative remedies, if "considering the factors set forth in [18 U.S.C.] section 3553(a)]" the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, 452 F. Supp. 3d 964, 966 (D. Or. 2020).

"The district court must enforce the administrative exhaustion requirement" when it is properly invoked by the Government. *United States v. Keller*, 2 F.4th 1278, 1280 (9th Cir. 2021). "Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes. First, it protects administrative agency authority by guaranteeing agencies the 'opportunity to correct [their] own mistakes.'" *United States v. Ng Lap Seng*, 459 F. Supp. 3d 527, 532 (S.D.N.Y. 2020) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). "Second, it promotes efficiency since claims 'generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.'" *Id.*

Section 3582 provides two alternative routes to exhaustion. In the first, a petitioner files a petition with the Warden seeking release, which is denied by the Warden and the petitioner proceeds to continue to fully exhaust his or her administrative remedies by appealing this refusal from the Warden. In the second, the Warden takes no action, 30 days lapse and, because of the Warden's failure to act, the petitioner may proceed without fully exhausting his or her administrative remedies.

In this case, the Government argues that this petition should be denied as Mr. Torres has not exhausted his administrative remedies. (Response.) Mr. Torres does not demonstrate that either of the routes listed above has been followed. Although he claims

he "exhausted all possible Administrative Remedies," he provides no evidence that he sought release from the Warden where he is being housed. Therefore, the Court must deny his request for release to home confinement on this ground alone.

Furthermore, Mr. Torres fails to show "extraordinary and compelling reasons" for his release. He is being treated by the Bureau of Prisons for his gastritis. Even his private doctor did not recommend immediate surgery but instead suggested that Mr. Torres return for an assessment in a couple of months. The medical records from the Bureau of Prisons show that his condition is being monitored. Although his concerns are understandable, they do not rise to the level of "extraordinary and compelling reasons" for immediate release.

### B. Order For Emergency Medical Treatment/Review as in *Lockwood v. Smith*

Mr. Torres asks that, if the motion for compassionate release is denied, that the Court then order the Bureau of Prisons to provide him with emergency medical care or do a review of the situation as ordered by the court in *Lockwood v. Smith*, No. 22-3027-SAC, 2022 WL 457795 (D. Kan. Feb. 15, 2022). The *Lockwood* case involved a prisoner's civil rights petition filed under the Eighth Amendment. Short of such a petition, the Court has no jurisdiction to order the Bureau of Prisons to provide certain medical care to Mr. Torres, nor would this Court feel qualified to do so. Mr. Torres's own private doctor did not schedule immediate surgery despite eight months of continuances of the sentencing and self-surrender date. Instead, the doctor suggested that Mr. Torres return for a reassessment at the clinic in a few months. This "wait and see" attitude seems in keeping with the conduct of the medical professionals at the Bureau of Prisons. This Court will not second guess this treatment without the existence of a civil suit with the resulting discovery and expert witnesses.

### III.  CONCLUSION

Because Mr. Torres has not exhausted his administrative remedies and fails to show extraordinary and compelling reasons for his release, the court **DENIES** his request for release to home confinement. (ECF No. 60.) Additionally, in the absence of a civil petition

filed under the Eighth Amendment, the Court **DENIES** the request to order the Bureau of Prisons to provide emergency medical treatment.

     **IT IS SO ORDERED.**

**DATED: December 6, 2022**

Hon. Cynthia Bashant
United States District Judge